UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

```
CHARLES VESCERA,                    :
         Plaintiff,                 :
                                    :
         v.                         :        File No. 1:04-CV-330
                                    :
UNUM PROVIDENT CORPORATION,         :
         Defendant.                 :
_____ :
```

RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT
(Papers 21 and 27)

I.   Introduction

Plaintiff Charles Vescera ("Vescera") is a former Radioshack employee who, after suffering a work-related injury, received long term disability ("LTD") benefits for some time pursuant to Radioshack's employee benefits plan (the "Plan"). When Unum Provident Corporation ("Unum"), the administrator of the Plan, discontinued Vescera's benefits and denied his appeals, Vescera sought review of Unum's decision by filing this action under the Employment Retirement Income Security Act of 1974 ("ERISA"). See 29 U.S.C. § 1001 et seq.

Now before the Court are the parties' cross motions for summary judgment. (Papers 21 and 27). Also pending are Unum's motions to strike several of Vescera's filings. (Papers 26 and 34). For the following reasons, the Court concludes that summary judgment shall enter for Unum as Vescera is unable to show that Unum's decision was arbitrary and capricious; thus, Unum's motions to strike are denied as moot.

II.   <u>Factual Background</u>

     A.   <u>Unum awards LTD benefits to Vescera</u>

The roots of this lawsuit reach back to late-1987 when Vescera, while working for Radioshack and moving and lifting diplays, suffered a back injury that necessitated a lumbar laminectomy.  Administrative Record ("Record") at 122-28.  Upon his recovery, Vescera resumed working for Radioshack for 13 years despite intermittent documented back pain.  Record at 539, 608-11.  About December 15, 2000, however, Vescera's back pain became unbearable and he had to stop working as a District Sales Manager.  Vescera then submitted a disability claim form to Unum on April 25, 2001 and described his injury as follows: "10/9/87 back injury resulted in back surgery[;] since surgery I have been dealing with chronic back pain, injury happened during course of employment."  Record at 13.  Although Vescera listed two treating physicians on this form, Dr. Eugene Russo ("Dr. Russo") and Dr. Thomas Paolino ("Dr. Paolino"), the only evidence submitted in support of his back injury were statements and medical records from Dr. Russo.  Record at 5-8, 16.  Of central importance to Vescera's claim was Russo's opinion that he was "totally and permanently disabled."  Record at 16.

On May 14, 2001, Unum approved Vescera's request for LTD benefits and explained that under the terms of the Plan, an individual is considered disabled when: (1) the individual is

limited from performing the material and substantial duties of his/her regular occupation due to sickness or injury; and (2) the individual has a 20% or more loss in their indexed monthly earnings due to the same sickness or injury.  Record at 32-33, 795.  The approval letter, however, advised Vescera that Unum would request "periodic medical evidence and vocational information to support" his claim and that:

> After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

Record at 32-33.

B.   Unum discontinues Vescera's LTD benefits

True to its word, Unum did not passively send checks to Vescera without conducting a continuing review of his case.  For example, on July 24, 2001, Unum requested that Vescera submit a supplemental medical statement form, which Vescera did, and had its own Associate Medical Director, Dr. Joseph Thomas ("Dr. Thomas"), conduct a second review of Vescera's file.  Record at 36-42.  Upon review, Dr. Thomas noted the absence of any imaging evidence, such as x-rays or MRIs, and opined:

> There is not enough information to support the conclusion of no work, there is also not enough information to make an adequate determination of the level of impairment.  Further records or an independent evaluation with MRI or CAT scan of the lumbar spine might be of help in determination of the true impairment.

Record at 47.

Based upon Dr. Thomas' opinion, on October 8, 2001, Unum requested that Vescera undergo an Independent Medical Evaluation ("IME").  Record at 63.  But in several e-mails and phone calls, Vescera and Radioshack both cried foul at this request because they felt the IME was scheduled too soon after the grant of LTD benefits.  To assuage their concerns, Unum agreed to postpone the IME and instead, on December 14, 2001, requested additional medical records.   Vescera responded in due course by submitting treatment records from the 1980s and early 1990s, but a review of these records did not change Dr. Thomas' opinion.  Record at 83-133, 138.

By letter dated September 10, 2002, Unum advised Vescera that it was beginning an evaluation of Vescera's eligibility for benefits beyond 24 months and requested additional information.  Record at 143.  In response, Dr. Russo submitted records as well as an "Estimated Functional Abilities Form" containing the following conclusions: (1) Vescera could occasionally lift/carry 1-10 pounds, bend, and climb stairs, but could never kneel, crawl, or lift/carry more than 10 pounds; (2) Vescera could not perform any level of activity during the day; and (3) Vescera is totally and permanently disabled.  Record at 176-77.  Thereafter, Dr. Thomas again reviewed Vescera's file and similarly concluded that "[t]here is no objective support for the conclusions found in the file."  Record at 185.

4

By the middle of 2003, Unum concluded the time was ripe for the IME.  It was eventually conducted on September 4, 2003 by Dr. H. James Forbes ("Dr. Forbes") in Concord, New Hampshire.[1]  Record at 198.  During the IME, Dr. Forbes talked to Vescera about his reported medical history, reviewed Vescera's medical records, and conducted a physical examination.  In addition to discussing his symptoms, Vescera told Dr. Forbes that he had just started taking methadone in the amount of half of a tablet four times a day.[2]  Ultimately, Dr. Forbes opined:

> Certainly this patient is at a medical endpoint in regard to his injury that occurred in 1987.  This patient's perception of himself is one of being severely disabled, however, this self-perception is not born out by the fact[s] . . . He is certainly able to function normally in everyday activities. Because of his degenerative lumbar disc disease, it would be natural to have some restrictions to prolonged standing or to prolonged sitting.  However, he does not appear to have any problems with prolonged sitting and watching TV all day. This patient certainly does have a work capacity.  It's very possible he cannot return to his prior job if it requires significant bending, lifting or carrying of appliances, TV's [sic], etc.  However, certainly he would have no problem doing a light duty job, particularly if there is the opportunity to intermittently stand or sit.  Patients with lumbar disc disease, the extent that he has, in fact are

---

[1]Vescera objected to the IME stating that Concord was too far to drive from his home in Woodstock, Vermont.  Record at 204. Unum explained to Vescera that it had tried unsuccessfully to find a closer doctor but that Dr. Forbes was the closest willing doctor without a conflict of interest.  Record at 203.  Unum then offered to provide transportation.  Although Vescera initially accepted this offer, he ultimately decided to drive himself. Record at 204, 215.

[2]As of October 6, 2003, Vescera had stopped taking methadone due to constipation and excessive daytime sleepiness.  Record at 324.

usually able to function at the light to medium duty work
capacity level . . . . The prognosis for him returning to work
with his narcotic dependence is poor.  At this point in time
I do not feel that any further testing is necessary because
I really do not feel that any further treatment is
necessary.  Any further attempts at treatment would probably
not significantly change his pain behavior.

Record at 226.

Unum sent copies of Dr. Forbes' report to both Dr. Russo and

Dr. Thomas for their respective comments.  Dr. Thomas responded

that "[t]he IME notes very little in objective findings that

would support any impairment" and that Vescera's surgery history

would support limitations "in bending, lifting, and carrying,

likely to the level of 20 to 25 pounds on an occasional basis."

Record at 236.  Dr. Thomas also observed that any claim of

narcotic impairment was discounted by Vescera's ability to drive

himself to Providence, Rhode Island for physician visits and to

the IME appointment itself.  Dr. Russo, on the other hand,

commented: "Without reviewing an extensive past history, this

patient has a chronic pain syndrome and essentially is unable to

perform any gainful employment."  Record at 246.  Dr. Russo also

attached to his letter consultation notes from the Dartmouth-

Hitchcock Clinic (the "Clinic") made during November and December

of 2002.  The office notes of the December 6, 2002 consultation

with Dr. Smith at the Clinic indicate that Vescera's pain had

partially improved and that Vescera called thirty minutes after

the appointment to explain "[h]e was much better" after taking

Celebrex and "wants to hold off on the x-ray."  Record at 243-44.
The office notes of the December 9, 2002 consultation with Dr.
Smith, however, indicate that the Celebrex was "completely
ineffective" and that Vescera's back pain was "[n]ot getting any
better, though it's not getting worse."  Record at 245.

Unum next consulted a vocational rehabilitation consultant,
Marian Pearman ("Pearman"), who explained that the occupation of
District Sales Manager:

> is classified as light level work and requires frequent
> reaching, handling, fingering, talking, hearing, near
> acuity; occasional lifting of up to 20 pounds, frequent
> lifting of up to 10 pounds, or a negligible amount
> constantly.  Lifting up to 50 pounds is not a material and
> substantial duty of this occupation as it is performed in
> the National Economy.

Record at 247.

On November 19, 2003, Unum spoke to Vescera on the phone and
sent a letter notifying him that his benefits were being
discontinued.  In the four-page letter, Unum explained that it
had considered the medical evidence submitted, including the
opinions of Dr. Russo, Dr. Forbes, and Dr. Thomas, as well as
Pearman's report.  Because Dr. Thomas' limitations for Vescera
fit within Pearman's analysis of Vescera's former position as
District Sales Manager, Unum concluded that Vescera could perform
"the material and substantial duties of his regular occupation as
it is performed in the national economy."  Record at 253.  Unum

provided a copy of this letter to Radioshack upon Radioshack's request.  Record at 263.

    C.   <u>Vescera appeals to Unum</u>

On February 23, 2004, Vescera, through counsel, appealed Unum's adverse determination.  Record at 523-30.  In the appeal, Vescera took issue with a number of Dr. Forbes' conclusions and provided medical records from Dr. Paolino (the second doctor whom Vescera had listed on his initial disability claim form) from May of 1997 through October of 2003.  Record at 303-20.  Dr. Paolino opined that Vescera's depression and generalized anxiety "render him unable to perform his job functions and duties in an adequate and appropriate manner."  Record at 310.

At this stage, Vescera's appeal and medical records were reviewed by two of Unum's medical staff, nurse consultant Latisha Toney ("Toney"), and Associate Medical Director Dr. Charles Sternbergh ("Dr. Sternbergh"), a Board Certified Orthopedic Surgeon.  Record at 546-47, 548-49.  In reviewing the evidence, Toney noted that in 2001, Vescera "was identified as having major depression and generalized anxiety d/o by Dr. Paolino" and "[i]n November 2003, Dr. Steven Smith at Dartmouth indicates that [Vescera] was doing well, affect was calmer."  Record at 547.  Dr. Sternbergh opined that Vescera had the ability "to do sedentary/light work, but with significant accommodation to prevent prolonged walking, sitting, standing" and that

"[r]epetitive bending or lifting should be discouraged, and a weight lifting limitation of 15 to 20 pounds on occasional basis would be appropriate."  Record at 548.

Based upon these opinions, on June 11, 2004, Unum denied Vescera's appeal explaining, among other things, that no medical records related to his anxiety and depression had been submitted for the period after November of 2003, the same time Vescera was observed as being calmer by Dr. Smith at the Clinic.  Record at 552-54.

D.  <u>Unum agrees to a second appellate evaluation</u>

Prompted by a flurry of correspondence and additional information from Vescera and Radioshack representatives, Unum agreed to conduct another appellate evaluation.[3]  Record at 677. In so doing though, Unum noted that the majority of "new" information was actually duplicate evidence already considered and that the "information that is not duplicative is a letter written by [Vescera] which was not signed or dated and additions to your medication log by Dr. Paolino on April 17, May 5, and July 21, 2004."  Record at 677.

In all, Unum's second review consisted of three main components.  The first was a peer-to-peer call between Dr. Sternbergh and Dr. Russo on October 5, 2004.  According to Dr.

---

[3]This second appellate evaluation was given "High Priority," apparently due to "significant customer service issues" and CEO and broker involvement.  Record at 695.

Sternbergh's notes of that conversation, Dr. Russo said he continued to see Vescera every two to three months with the most recent visit being in July of 2004.  Record at 700.  Dr. Russo also agreed with the restrictions and limitations summarized in Dr. Sternbergh's May 27, 2004 report, but still felt Vescera was "not an appropriate candidate for gainful employment."  Record at 700.

The second component consisted of a review of Dr. Paolino's records by both Toney and Dr. Keith Caruso ("Dr. Caruso"), a Licensed Physician Board Certified in Forensic and General Psychiatry.  Record at 696, 702-03.  Upon review, Caruso opined "[t]here is no documentation to support the presence from [sic] an occupationally impairing psychiatric disorder after 04/13/03" and that "[r]ecords from Dr. Smith dated 11/03/03 indicate significant improvement in depressive symptoms."  Record at 703.

Finally, Unum solicited Shannon O'Kelley ("O'Kelley"), a Senior Vocational Rehabilitation Consultant, to provide a renewed vocational assessment.  After confirming with Dr. Sternbergh that Vescera "should be able to tolerate sitting, standing or walking up to two hours," O'Kelley concluded that Vescera could perform the light capacity duties of "Area Supervisor, Retail Chain Store," as well as other occupations including "Manager, Procurement Services," "Customer Service Manager," and "Recruiter Professional."  Record at 710-14.

At the conclusion of this second review process, on November 4, 2004, Unum upheld the denial of Vescera's claim for LTD benefits.  Record at 720-24.  On November 12, 2004, Vescera's counsel e-mailed Unum questioning: (1) why Dr. Russo was not given an opportunity to confirm Dr. Sternbergh's conversation notes; (2) why Dr. Paolino and Dr. Smith were not contacted for peer-to-peer calls; and (3) why Dr. Paolino's notations from the summer of 2004 were not reviewed.  Record at 736.  The same day, Unum responded by letter stating it would clarify with Dr. Sternbergh why he did not have the conversation confirmed by Dr. Russo; it is within the discretion of the treating physicians to determine whether a peer-to-peer call is warranted; and the most significant information for appellate review is from the disability claim date through the date of denial.  Record at 741. Unum eventually learned from Dr. Sternbergh that he did not request a confirmation letter from Dr. Russo because "[t]he conversation seemed to have no major new data or opinions, and is documented in my note."  Record at 756.  Before passing this explanation along to Vescera, the instant lawsuit was filed on November 30, 2004.

III. <u>Summary Judgment Standard</u>

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Even where facts are disputed, in order to defeat summary judgment, the non-moving party must offer enough evidence to enable a reasonable jury to return a verdict in that party's favor.  See, e.g., Atlantic Mut. Ins. Co., Inc. v. CSX Lines, L.L.C., 432 F.3d 428, 433 (2d Cir. 2005).  On cross motions for summary judgment, each moving party has an initial burden of informing the Court of the basis for its motion and of identifying the absence of a genuine issue of material fact.  See Barhold v. Rodriguez, 863 F.2d 233, 236 (2d Cir. 1988).

IV.  Discussion

    A.   Threshold Matters

    Before turning to the merits of this case, it is necessary to determine what standard of review shall apply, and further, whether the administrative record should be supplemented with Dr. Russo's deposition and Unum's Claims Manual.

        1.   Standard of Review

    Where, as here, an ERISA plan vests discretionary authority in the claim administrator to determine eligibility for benefits, see Record at 799, courts review the administrator's decision using the arbitrary and capricious standard.  See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  Although Vescera readily concedes that the Plan grants Unum discretionary

authority to determine benefits, (Paper 21 at 2), he nevertheless urges de novo review based upon a conflict of interest:  "Unum is the entity that reviews the claims and pays the claims."  (Id. at 19).

In order to trigger de novo review because of Unum's dual status as plan administrator and plan insurer, it is Vescera's burden to show that "the administrator was in fact influenced by the conflict of interest."  Sullivan v. LTV Aerospace & Defense Co., 82 F.3d 1251, 1255-56 (2d Cir. 1996) (emphasis added). Vescera's arguments on this point, however, are little more than speculation as to the motivations underlying Unum's decision in this particular case.[4]  Because the dual role of plan administrator and insurer "is alone insufficient as a matter of law to trigger stricter review,"  Pulvers v. First Unum Life Ins.

_____

[4]For example, Vescera cites a host of cases to show that "Unum is no stranger to the courtroom or to charges that it has failed to follow proper claims handling procedures."  (Paper 21 at 23).  Those findings, however, are irrelevant to the circumstances of this case, and fail to show that Unum's decision here was based upon a conflict of interest.

Equally unconvincing is Vescera's attempt to show a conflict in fact by asserting that Unum failed to follow the non-binding guidelines set forth in its Claims Manual.

Finally, Vescera's apparent reliance on Locher v. Unum Life Ins. Co. of Am., 389 F.3d 288 (2d Cir. 2004) for his argument that de novo review should apply is misplaced.  While Locher clearly stated that "a conflict of interest does not per se constitute 'good cause' to consider evidence outside of the administrative record upon a de novo review," see id. at 294, Locher "did not clarify when a district court should review a case de novo and consider evidence outside the administrative record."  Robbins v. Laberge Eng'g & Consulting Ltd., 2005 WL 2039195, at * 8 (N.D.N.Y. Aug. 24, 2005).

Co., 210 F.3d 89, 92 (2d Cir. 2000), and Vescera is unable to show that Unum's decision was in fact based upon an alleged conflict, the Court will review Unum's denial of benefits under the deferential arbitrary and capricious standard of review.

The arbitrary and capricious standard of review is highly deferential to the plan administrator and has been described as "the least demanding form of judicial review." Olander v. Bucyrus-Erie Co., 187 F.3d 599, 607 (7th Cir. 1999). Under this standard, the question before the Court is "whether the [administrator's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst., 46 F.3d 1264, 1271 (2d Cir. 1995). If so, the decision is not arbitrary and capricious. In other words, a court may "overturn a decision only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law." Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 249 (2d Cir. 1999). Substantial evidence is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [administrator and] . . . requires more than a scintilla but less than a preponderance." Celardo v. GNY Auto. Dealers Health & Welfare Trust, 318 F.3d 142, 146 (2d Cir. 2003) (citation omitted). The burden of demonstrating that the denial of benefits was arbitrary and capricious falls squarely on

14

Vescera.  See Vuksanaj v. Bldg. Serv. 32B-J Health & Pension
Fund, 101 F.3d 681, *1 (Table) (2d Cir. 1996).

      2.  Scope

     By order dated February 12, 2006, the Court allowed Vescera
to obtain a copy of Unum's Claims Manual and to depose Dr. Russo
on the limited issue of the peer-to-peer telephone conversation
with Dr. Sternbergh, but did not rule on whether these materials
would supplement the administrative record.  (Paper 19).
Utilizing its discretion, and in light of this Court's
determination that the arbitrary and capricious standard of
review applies, the Court declines to supplement the
administrative record with Dr. Russo's deposition.  See Miller v.
United Welfare Fund, 72 F.3d 1066, 1071 (2d Cir. 1995)
(explaining that "a district court's review under the arbitrary
and capricious standard is limited to the administrative
record").  While there certainly exist circumstances in which
supplementing the record may be proper, the Court finds Vescera
has failed to demonstrate the existence of additional factors
that would constitute "good cause" in this case.  See, e.g.,
Locher, 389 F.3d at 295 (holding that a conflict of interest is
not per se good cause to consider evidence outside of the record,
but may be in combination with other factors such as insufficient
procedures for review or the failure of an insurer to include a
claimed reason for denying benefits).

Despite the fact that review of the denial of benefits is limited to the administrative record, the Court believes that consideration of the submitted portions of Unum's Claims Manual is proper because it was available to Unum during evaluation of Vescera's claim.  See Nelson v. Unum Life Ins. Co. of Am., 421 F. Supp. 2d 558, 573 (E.D.N.Y. 2006) (concluding that consideration of Unum's claims manual was proper for the same reason).

B.   Unum's decision was not arbitrary and capricious

Turning now to the merits of this case, based upon a complete review of the record and the submitted portions of the Claims Manual, the Court finds that Unum's decision was not arbitrary and capricious.  The opinions of four reviewing physicians – Dr. Thomas, Dr. Sternbergh, Dr. Caruso, and independent medical examiner Dr. Forbes (who conducted a thorough evaluation of Vescera in person) – support the conclusion that Vescera was capable of performing light level work with limitations as to bending/lifting/carrying and prolonged periods of standing/sitting.  When considered alongside the vocational analyses performed in this case, these opinions provide more than a scintilla of evidence such that a reasonable mind might conclude that Vescera could perform the material duties of his job as that occupation is performed in the regular economy.

Of course, the strongest evidence Vescera submitted in support of his claim was Dr. Russo's opinion, which initially was

in stark contrast to those offered by Dr. Thomas, Dr. Sternbergh, and Dr. Forbes.  At no point, however, was Unum obliged to accord a treating physician's opinion with any special deference.  See Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003).  Moreover, "the mere existence of conflicting evidence does not render the [administrator's] decision arbitrary or capricious."  Rosario v. Local 32B-32J, 2001 WL 930234, at *4 (S.D.N.Y. Aug. 16, 2001) (citations omitted).  Even so, in the end, Dr. Russo substantially agreed with the restrictions and limitations summarized in Dr. Sternbergh's May 27, 2004 report, thus limiting the import of Dr. Russo's ultimate opinion.

Seeming to cherry-pick portions of the nearly 1000-page record, Vescera launches several primary reasons why the Court should overturn Unum's decision, hoping that something (or everything in tandem) can fly high enough to clear the arbitrary and capricious hurdle that stands in his way.  His attempt falls short.

First, Vescera argues that Unum failed to obtain records from Dr. Paolino during its initial review and further, that once documentation from Dr. Paolino was submitted, Unum failed to properly consider it.  These contentions have a hollow ring for at least three reasons.  For one, Vescera wholly failed to sustain his burden of producing medical documentation from Dr. Paolino to support an initial claim of disability due to mental

17

illness.  See, e.g., Juliano v. Health Maint. Org. of N.J., 221
F.3d 279, 287-88 (2d Cir. 2000) (it is the plaintiff's burden to
show he is disabled, not the administrator's burden to prove the
opposite).[5]  On his disability claim form, Vescera never even
hinted that there was a psychiatric component to his claim.
Second, once Unum received records from Dr. Paolino, contrary to
Vescera's belief, Toney duly noted each of them, including Dr.
Paolino's medication log listing dates of April 13, 2004, May 5,
2004, and July 21, 2004.  As the record shows, however, Toney
considered the medication log to be in a distinctly separate
category than Dr. Paolino's psychiatric progress notes.  Record
at 698.  Dr. Caruso then, in considering the psychiatric
documentation "from 11/03 forward," which includes the 2004
medication log, opined that there was no documentation to support
the presence of an occupationally impairing psychiatric disorder
after April 13, 2003, the same date as the most recent
psychiatric progress note submitted by Dr. Paolino.  Record at
671, 703.  From this, it is apparent that Toney and Caruso
reasonably afforded more weight to the progress notes and less
weight to the medication log.  Finally, although not mentioned by
Vescera, it cannot be ignored that the Plan itself only allows

_____

[5]For the same reasons, the Court finds unavailing Vescera's
criticism of Unum for making "only limited attempts to obtain
complete medical records and [not conducting] any objective
testing that it claimed was lacking."  (Paper 21 at 14).

for recovery of benefits due to mental illnesses, including depression, for "a limited pay period up to 24 months." Record at 778, 789.  Thus, since Vescera already received LTD benefits for 24 months, even if he had been able to show disabling depression, under the terms of the Plan, he would have been ineligible to receive additional benefits based upon this alleged impairment.

Vescera also asserts that Dr. Sternbergh's conclusion that Vescera should be able to tolerate sitting, standing or walking up to two hours is not supported by the evidence.  But, Dr. Sternbergh, as a licensed physician board certified in neurosurgery, was certainly qualified to offer this opinion upon studying "[t]he clinical data set, reviewed in its entirety." Record at 548.  Moreover, Dr. Russo agreed with the restrictions and limitations imposed by Dr. Sternbergh, and Dr. Forbes' independent evaluation verified that Vescera did not seem to have any problems with prolonged sitting during the day.  Dr. Sternbergh's conclusions are further supported by the fact that Vescera would periodically drive from Vermont to Providence, Rhode Island.[6]

---

[6]In a similar vein, Vescera is unable to hurdle the arbitrary and capricious bar by highlighting Unum's June 11, 2004 statement that Vescera's "work environment appears to be one that would allow for changes in positioning on an as needed basis." Record at 552.  This statement is supported, at least in part, by Radioshack's own job description.  In addition to explaining that a district sales manager must travel and continuously stand and walk, the job description explains that "[a]ll requirements are subject to possible modification to reasonably accommodate

Vescera next takes issue with Dr. Forbes' report, arguing
that it was argumentative, revealed a predisposition to support
Unum's decision, exaggerated facts, and ignored "the overwhelming
evidence of Mr. Vescera's disability."  (Paper 21 at 10).  In so
doing, Vescera has cut and pasted the arguments previously raised
by Vescera's prior counsel during the first appeal to Unum.
Record at 526-29.  There are two main problems with Vescera's
position.  For one, he has not adequately cited portions of the
record that would support his prolonged attack of Dr. Forbes and
many of his accusations are part speculation, part creativity.
Moreover, Unum's decision did not rise and fall solely with Dr.
Forbes' report.  As previously discussed, Dr. Thomas and Dr.
Sternbergh offered similar opinions to that of Dr. Forbes, and
Vescera's treating physician, Dr. Russo, agreed with the
limitations imposed by Dr. Sternbergh.  Thus, even if he were
able to partially discredit Dr. Forbes' report, which Vescera has
not done, under the arbitrary and capricious standard, there is
still more than a scintilla of evidence to support Unum's
decision.

Vescera's contention that Unum's denial of benefits was
arbitrary and capricious because he was awarded disability
benefits from the Social Security Administration (the "SSA") is
unavailing.  It is well-settled that "a plan administrator is not

individuals with a disability."  Record at 9.

bound by the determination of the [SSA]" and so long as the plan's finding is "reasonable and supported by substantial evidence," it is not arbitrary and capricious simply because it diverges from the conclusions of the SSA.  See Gaitan v. Pension Trust Fund, 2000 WL 290307, at *5 (S.D.N.Y. Mar. 20, 2000).[7]

Similarly unpersuasive is Vescera's argument that Unum's alleged noncompliance with its Claims Manual guidelines show the arbitrary and capricious nature of Unum's decision.  Primarily, the guidelines in the Claims Manual simply do not have a legally binding effect.  The Claims Manual unequivocally explains that it provides "guidelines, rather than definitive, 'hard and fast' rules on the handling, evaluation and determination of claims." (Paper 29-2 at 13); see also Karamshahi v. Northeast Utils. Serv. Co., 41 F. Supp. 2d 101, 105 (D. Mass. 1999) (noting that the defendant's claims manual merely offered guidelines without the force of law).  Furthermore, a number of the alleged instances of noncompliance are either not supported by the record or would have had no effect on the outcome of Unum's decision.  For instance, there is evidence that Concord, New Hampshire was in fact the closest possible location for the IME; there is also evidence that Radioshack was intimately involved throughout the

---

[7]Vescera's reference to the Multistate Reassessment Agreement (the "Agreement") misses the mark because it is undisputed that the Agreement was not in effect when Unum denied Vescera's claim and Vescera never sought to have his claim reassessed under the terms of that agreement.

claim process and even influenced to some degree the process in Vescera's favor.

As a final note, two aspects of this case bear repeating, as they are reflective of Unum's overall treatment of Vescera during the claim process.  For one, Dr. Russo was given ample opportunity to discuss the results of the IME and a chance to speak with Dr. Sternbergh about Vescera's ailments and refute Dr. Sternbergh's conclusions.  Given these opportunities, however, Dr. Russo was unable to offer a compelling reason why his conclusion was better supported.  Instead, Dr. Russo simply reiterated his final opinion that Vescera "essentially is unable to perform any gainful employment"; and, unfortunately for Vescera, during the peer-to-peer call, Dr. Russo agreed with the limitations imposed by Dr. Sternbergh.  The second aspect of this case that stands out is that on more than one occasion, Unum accommodated Vescera's and Radioshack's requests by both postponing the first IME and seeking and receiving approval to conduct a second appellate evaluation.  While not at all dispositive, these aspects of the case highlight that Vescera received a full hearing in which his concerns were heard and addressed.

## Conclusion

The record reflects more than a scintilla of evidence to reasonably conclude Vescera had the capacity to work.  Although

Vescera presented evidence that he suffered from back pain and depression and anxiety, there was substantial evidence by which Unum could conclude that he was not disabled as defined by the Plan.  Because Unum's decision was not arbitrary and capricious, Vescera's motion for summary judgement (Paper 21) is DENIED and Unum's motion for summary judgment (Paper 27) is GRANTED.  Thus, Unum's motions to strike (Papers 26 and 34) are DENIED as moot.[8]

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 18th day of October, 2006.


/s/ J. Garvan Murtha
J. Garvan Murtha
United States District Judge

---

[8]The Court, however, notes the merits of Unum's motions to strike and advises counsel for Plaintiff that filings in this Court from this date forward shall strictly adhere to the Local Rules of this District.